*In re* MARRIAGE OF ESLEE KESSLER, a/k/a Eslee Brody, Petitioner and Counterrespondent-Appellee and Cross-Appellant, and STANTON KESSLER, Respondent and Counterpetitioner-Appellant and Cross-Appellee.

First District (5th Division)   No. 81—2134

Opinion filed October 22, 1982.

Robert A. Helman and Douglas A. Poe, both of Chicago (Mayer, Brown & Platt, of counsel), for appellant.

Neumark & Bonner, Ltd., of Chicago (J. Scott Bonner, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

This is an appeal by both parties from orders of the trial court in a post-divorce judgment proceeding.

On appeal, respondent, Stanton Kessler, contends that the trial court erred (1) by modifying the weekend joint custody residential schedule set forth in the initial judgment for divorce; (2) by characterizing the respondent's monthly payments to petitioner, Eslee Brody, as child support and not maintenance, thereby altering the tax conse-

quences embodied in the initial judgment; (3) by increasing the amount of child support payments; (4) by denying his supplemental petition seeking recovery of a portion of the monthly payments received by petitioner during the period she resided with her present husband, Dr. Bruce Brody, prior to their marriage; and (5) by assessing a portion of petitioner's attorney fees and costs against him.

Petitioner cross-appeals, contending that the trial court erred by denying her petition for declaratory relief regarding the permissibility of joint custody of minor children under Illinois law and the rights of the parties as joint custodians.

We affirm in part, reverse in part and remand.

The following pertinent evidence was adduced at the hearing held on the post-decree proceedings.

Petitioner and respondent were married on July 20, 1969, and their marriage was dissolved on July 22, 1977. Two children were born of this marriage, Alexis, now age 8, and Louis, age 6. The initial judgment for divorce incorporated an extensive agreement that had been reached between the parties relating to such matters as the custody and residence of the children, the nature and extent of the periodic payments made to petitioner from respondent, the circumstances under which those payments would be increased or reduced, and the payments of attorney fees and costs by each party.

Insofar as it is relative to the issues raised in the present appeal, this agreement provided that the parties would maintain a primary residence in Chicago for 3½ years from the date of judgment and that neither would move from Chicago unless a prior court order was obtained. Both parents were awarded joint custody of the two children, who were to reside each week with their father from 6 p.m. on Friday until 1 p.m. on Sunday, and from 6 p.m. on Tuesday until 8 a.m. on Wednesday, the remaining portion of each week being spent with their mother.

The agreement further provided that respondent would make monthly payments to petitioner, which payments were characterized as "periodic payments" that would be deductible to respondent and taxable to petitioner under section 71 of the United States Internal Revenue Code. (Internal Revenue Code of 1954, 26 U.S.C. sec. 71 (1976).) Respondent was also obligated to pay petitioner's Federal and State income taxes with respect to these payments. The payments were not to be increased based upon any future increases in his income nor reduced by any amount that she might receive upon resumption of employment. Upon the occurrence of specific contingencies, including the remarriage of petitioner, the payments were to be

reduced by 60%.

With respect to the payment of attorney fees and court costs, the agreement provided that "each party will pay his or her attorney fees and court costs incurred either in connection with this Agreement or in connection with any proceedings involving this Agreement." Both the agreement and the divorce judgment expressly provided that the agreement would survive its incorporation in the divorce judgment.

Approximately two years subsequent to the parties' divorce, petitioner married Dr. Bruce Brody on October 2, 1979. On October 16, 1979, the respondent filed a petition to modify the divorce judgment to have his residence designated as the principal place of residence of the children and to prohibit the removal of the children's residence to Winnetka by petitioner and Dr. Brody.

The petition also alleged, *inter alia*, that on or about March 1979, petitioner had commenced cohabiting at her residence on a continuing, conjugal basis with Dr. Bruce Brody, and that they were contemplating removing the children to reside in the suburbs contrary to the provisions of the divorce. Petitioner filed a response to this petition on April 8, 1980.

On December 12, 1979, respondent filed a petition for a preliminary injunction seeking to prevent petitioner from removing the children from Chicago to Winnetka, Illinois, where the Brodys had purchased a house. Petitioner filed a response to the petition for preliminary injunction, and a motion for temporary relief to allow the move during the pendency of the proceedings. In addition, petitioner filed a petition for declaratory relief and for modification of the divorce judgment. The petition sought, *inter alia*, that (1) joint custody be terminated; (2) that the Tuesday evening overnight visitation with respondent be eliminated, and (3) "that the frequency of the weekend visitation schedule be reduced in such manner as this Court deems to be in the best interests of and welfare of the parties' minor children."

The circuit court thereupon entered an order on December 20, 1979, denying respondent's petition for preliminary injunction and granting petitioner leave to remove the residence of the children from Chicago to Winnetka.

On March 13, 1980, respondent filed a petition seeking a rule to show cause against petitioner for interference with his visitation rights and an order that petitioner share the transportation arrangements in connection with the visitation schedule. Petitioner responded to this petition on May 15, 1980.

On October 20, 1980, the circuit court entered an order requiring the petitioner to transport the children on Friday evenings, and alter-

nating Tuesday evenings and Sunday afternoons, with the remaining transportation being the responsibility of respondent.

Respondent filed a supplement to this petition to modify the divorce judgment on October 8, 1980. He alleged that, pursuant to the divorce judgment which provided for a reduction in monthly payments from $1,500 to $600 upon petitioner's remarriage, he had overpaid her $5,435 by virtue of her cohabitation on a resident, continuing, conjugal basis with Dr. Brody for a five-month period in 1979 prior to their marriage.

Hearings limited to the issue of petitioner's request that the joint custody arrangement be terminated, and the time that the children reside with respondent on Tuesdays and weekends be reduced were held in April 1981.

Respondent was called as an adverse witness under section 60 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60, now cited as section 2—1102 of the Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 2—1102). He testified that petitioner drives the children to his residence, or that of a friend, Susan Getzendanner, between 6:30 and 7 p.m. on Tuesdays, where they have dinner, and he drives the children to school in Winnetka on Wednesday morning. He has a weekend visitation period extending from Friday at 6 p.m. until Sunday at 1 p.m. He stated that he engages in many activities with the children on weekends, and that he is flexible and accommodates them concerning school or leisure activities that conflict with his visitation by either driving them to the event, or permitting them to remain in Winnetka for the event.

Dr. Marv Meyer, a clinical psychologist, was called as a witness by petitioner. He testified that he had seen both parties in a professional capacity on six occasions in 1979, and had seen Alexis once in 1979 and Louis for an extended period in 1980. His evaluation of the children related to the circumstances that existed in 1979. Dr. Meyer testified that it was essential for respondent to maintain his normal involvement with the children and that the minimum amount of time that he should see the children was twice a week. He recommended Tuesday visitation without sleeping over and alternate weekend visitation. He also testified that the joint custody arrangement "perpetuates the fight" between the parties.

Dr. Robert Bussell, a psychiatrist, was called as a witness by respondent. He performed an independent evaluation of the joint custody arrangements by agreement of the parties in 1980.

He testified that the relationship between respondent and the children was of "unusually good quality." In his opinion, the children

clearly perceived their primary home as being with petitioner, and the overnight visits did not cause them any difficulty in terms of their sense of home. He further testified that the overnight Tuesday visitation was having a "very positive effect" on the children.

Petitioner testified on her own behalf that at the time of the divorce she believed the joint custody residential schedule to be in the children's best interests but that it had proven to be too inflexible in accommodating their current needs. She stated that the children's current interests are shifting away from the family and they desire more contact with their school friends, and that Louis seems to be tired and listless on Wednesday afternoons after the Tuesday overnight visitation.

Petitioner further stated that she does not have any recreation time with the children on weekends and that she thought they would benefit from staying at her home at least one weekend a month to "play with their friends and be with Bruce and myself in our family structure."

Amy Wieder, Louis' kindergarten teacher, was called as a witness by respondent. She testified that Louis had an exceptional amount of energy and exhibited no change in his attitude on Wednesday mornings.

Susan Getzendanner, a friend of respondent, testified that she often sees the children on Wednesday mornings when she stops at respondent's apartment to give him her car to drive the children to Winnetka, and that they do not appear to be fatigued on Wednesday mornings.

On June 26, 1981, a hearing was held on those issues relating to the monthly payments made to petitioner by respondent, and to the issue of attorney fees.

Petitioner testified that the monthly expenses for the children are $1,937 and that the $600 per month which she receives from respondent is not sufficient to support the children.

In her affidavit detailing the children's expenses, petitioner attributed, *inter alia*, 37% of the monthly mortgage payments and 50% of the monthly utility bills to the children "because they watch a lot of television."

On cross-examination, she stated, however, that none of the money received by her from respondent was being used for mortgage payments, and that Brody paid all the household utility bills pursuant to agreement.

She further testified that she informed respondent at the beginning of March 1979 that Brody was going to be living with her and

that they were going to be married as soon as possible. She stated that respondent did not object to the living arrangement and that when he picked up the children at her apartment twice a week, Brody was usually present.

Brody moved into her apartment at the end of March 1979 with an intention to marry her, but subsequently their wedding was delayed. She stated that he moved most of his clothes into her apartment, she prepared his meals, and they engaged in sexual relations. She testified that she did not remember telling respondent that Brody had his own apartment.

Respondent, called as an adverse witness under section 60 (Ill. Rev. Stat. 1977, ch. 110, par. 60, now cited as section 2—1102 of the Code of Civil Procedure, Ill. Rev. Stat. 1981, ch. 110, par. 2—1102), testified that in 1977 his gross income was $88,904 and his 1980 income from his law practice was $117,558.

He reduced the payments made to petitioner from $1,500 per month to $600 per month in September 1979, after she admitted to him that she was living with Brody.

Respondent testified on his own behalf that in late March 1979, certain comments by the children led him to believe that Brody was sleeping at petitioner's apartment. However, he was unable to ascertain whether Brody was living in petitioner's apartment. Subsequently petitioner brought the children down to the door for a three- to four-week period instead of letting him up into her apartment.

In July 1979, he confronted Eslee with his suspicion that Brody had moved into her apartment in a conversation in the presence of Dr. Meyer, to which she replied, "That is right, but it is none of your business." After consulting with his attorney, respondent reduced the payments in September 1979 to $600 per month.

He testified that he has income of approximately $50,000 after taxes and deductions, which is spent for living expenses for himself and the children and the payments to petitioner. The record reflects that his income has increased steadily since the original judgment in 1977. He buys food, some clothing for the children and pays certain medical expenses.

At the time of the hearings, he was negotiating to purchase an apartment adjoining his own apartment for between $70,000 and $80,000 so that the children can each have a bedroom.

He further stated that he deducts the $600 monthly payments to petitioner, plus the tax payments that he makes to her, in determining his Federal and State income taxes. Pursuant to the agreement he reimburses petitioner for her income tax payments.

On April 29, 1981, the circuit court declined to modify the joint custody arrangement but ruled that the children would reside with respondent on Tuesdays and alternate weekends.

On August 4, 1981, the court ruled that notwithstanding the designation of the periodic payments in the divorce judgment as "alimony,"[1] the payments were for child support. While stating that the petitioner's apportionment of some of her household expenses to the children was "somewhat inflated," the court increased the child support payments to $1,200 per month.

The trial court further ordered respondent to pay $10,000 in petitioner's attorney fees and $1,225.30 in costs as his contribution towards petitioner's $17,000 attorney fees.

A written order incorporating the August 4, 1981, rulings also denied respondent's petition for recovery of periodic payments and it is from these orders that respondent appeals. Petitioner cross-appeals from the orders which (1) sustain the validity of the joint custody arrangement, and (2) deny modification of the Tuesday overnight visitation schedule.

OPINION

Initially, we address the petitioner's argument on cross-appeal that since joint custody is not specifically authorized by the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) the trial court erred by denying her declaratory relief with respect to the permissibility of joint custody arrangements and the rights and obligations of the parties thereunder.

In light of recent legislation, we find that petitioner's argument is now rendered moot. During the pendency of this appeal, an amendment creating section 603.1 of the Marriage and Dissolution of Marriage Act became effective upon its enactment on September 17, 1982. Pub. Act 82—1002.

Section 603.1 provides in pertinent part:

"(a) Upon the application of either or both parents or upon its own motion, the court may award joint custody. Joint custody may not be awarded unless it is determined that such custody is in the best interest of the child *** and both parties agree to the joint custody and terms of the joint custody ***." Pub. Act. 82—1002.

Since section 603.1 expressly authorizes joint custody awards

---

[1]The former term "alimony" is now replaced by the term "maintenance." Ill. Ann. Stat., ch. 40, par. 504, Historical and Practice Notes, at 523 (Smith-Hurd 1979).

when in the best interest of the subject children and upon agreement of the parties, we reject petitioner's argument that joint custody is not permissible in Illinois. Accordingly, we turn now to consider respondent's first contention that the trial court erred by modifying the weekend joint custody residential schedule as set forth in the initial judgment for divorce.

■ Respondent specifically argues that the circuit court erred in applying a "best interest" test to restrict his visitation with the children, pursuant to the visitation provisions of the Act (Ill. Rev. Stat. 1979, ch. 40, par. 607), which disallows such a restriction absent a finding of serious endangerment to the child.

We find, however, that respondent first argues this position on appeal and it is, accordingly, waived.

In the instant case, the trial court held that modification of the weekly joint custody residential schedule was authorized pursuant to section 610 of the Act, which prior to this appeal provided in pertinent part:

> "(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment *** that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child."

■ Section 610(b)(1), (2) and (3) further provided for retention of the original *custodian* subject to a "serious endangerment" to the child test. (We note that the latter provision has been stricken pursuant to the amendments embodied in Public Act 82—1002.) Nonetheless, since both parties were retained as joint custodians, we find that the criteria of subsections (1), (2) and (3) of section 610 were not applicable to the case at bar, and the trial court properly applied the "best interests of the child" test in modifying the weekly residential schedule under the prior judgment.

It should be noted parenthetically that we recognize the confusion engendered at the trial court level by the hybrid nature of the joint custody arrangement in the present case, where respondent, a joint custodian, appears to be exercising a form of visitation rights.

Prior to the enactment of section 603.1, joint custody, or the modification thereof, was not specifically authorized or defined by statute. The legislature has now attempted to rectify this previously gray area by providing that joint custody modification after a two-year period following the initial custody judgment must be determined under the standards of section 610. As amended, section 610 provides for such modification where "a change has occurred in the circumstances of

the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child."

█ Having examined the application of the correct standard, we are of the opinion that the trial court did not abuse its discretion in determining that the weekend custody schedule is detrimental to the children's best interests where its frequency prevents a balanced relationship, or recreation time, with their mother and new family unit. The children, ages 8 and 6, are now of school age, and the trial court properly found that at this stage of their development they need more frequent and consistent opportunities to interact with their peer group who are within the area of their primary home with petitioner.

In conjunction with this issue, we have also considered petitioner's argument on cross-appeal that the trial court erred by retaining the existing Tuesday night custody schedule. We find that the trial court's determination that both parties have demonstrated a genuine and honest concern for the best interests of their minor children, despite the friction generated between the parents as a result of the Tuesday night visitation, is amply supported by the record.

█ In addition, we are cognizant that stability of environment is an important factor in determining what is in the best interest of the child. See *De Franco v. De Franco* (1978), 67 Ill. App. 3d 760, 384 N.E.2d 997.

Since the trial court's findings with respect to the Tuesday overnight schedule are not against the manifest weight of the evidence, we accordingly affirm this portion of the trial court order.

Respondent next contends that the trial court erred in its determination that the intrinsic nature of his support obligation represented child support and not alimony. We do not agree.

In support of this position respondent refers us to the terms of the agreement incorporated within the original divorce judgment. Article III of the agreement provides that respondent pay petitioner $1,500 a month "as alimony for both her support and that of Alexis and Louis, the minor children of the parties hereto," and further sets forth that these payments decrease by 60% from $1,500 to $600 a month upon petitioner's remarriage. There is no separate provision in the judgment providing for child support.

Article XI of the agreement provides: "In the event ESLEE remarries and there is a partial abatement of the installments of money in accordance with Article III *** then the remaining sums to be paid by STANTON to ESLEE *** shall continue to be treatable as periodic payments under Section 71 of the Internal Revenue Code of 1954 and deductible by STANTON under Section 215 ***."

Despite the provisions of the agreement, however, section 510(b) of the Marriage and Dissolution of Marriage Act provides: "[T]he obligation to pay future maintenance is terminated upon *** the remarriage of the party receiving maintenance ***." Ill. Rev. Stat. 1977, ch. 40, par. 510(b).

■■ We have previously held that parties to a divorce may not, by their agreement, purport to continue maintenance payments beyond the occurrence of one of the mandatory "terminating" events specified by section 510(b). *Bramson v. Bramson* (1980), 83 Ill. App. 3d 657, 661, 404 N.E.2d 469, wherein the court stated, "Neither the parties pursuant to agreement nor the courts can avoid the statute's directive. See *Duvall v. Duvall* (1972), 8 Ill. App. 3d 53, 289 N.E.2d 59 (by incorporating settlement agreement in the decree, the court does not divest itself of the power to modify)."

■■ It is an established rule in this State that it is not the label placed upon payments made under the terms of a divorce judgment which is determinative of their nature. (*Richeimer v. Richeimer* (1972), 9 Ill. App. 3d 376, 292 N.E.2d 190.) An agreement to avoid tax consequences by giving the husband the ability to deduct for income tax purposes payments which were actually intended for child support should not be enforced to permit the husband to thus avoid part of his responsibility to support his minor children during the period when they are in the custody of the wife. (*Sudler v. Sudler* (1976), 35 Ill. App. 3d 917, 342 N.E.2d 772, *cert. denied* (1976), 429 U.S. 921, 50 L. Ed. 2d 288, 97 S. Ct. 318.) An equitable adjudication of the rights of the litigants must necessarily be predicated upon the substance rather than the form of their agreement. *Weber v. Weber* (1979), 77 Ill. App. 3d 383, 396 N.E.2d 43.

■■ Accordingly, we find that the trial court did not err in characterizing the respondent's monthly payments to petitioner as child support and not alimony.

Respondent also urges that the trial court erred by increasing the amount of child support payments from $300 to $600 per month, aggregating a total of $1,200 per month.

■■ In Illinois, maintenance and child support are continuing obligations subject to change as the conditions and circumstances of the parties warrant. (*In re Sharp* (1978), 65 Ill. App. 3d 945, 382 N.E.2d 1279.) The trial court has the power to modify child support provisions of a divorce judgment if a modification has been shown to be necessitated by changes in the conditions and circumstances of the parties occurring subsequent to entry of the divorce judgment. *Winter v. Winter* (1978), 69 Ill. App. 3d 359, 387 N.E.2d 695.

■■■■■ When determining whether there is sufficient cause to modify, courts consider both the circumstances of the parents and the circumstances of the children. (*Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 367 N.E.2d 512.) New or changed conditions are necessary to warrant a change in support payments (*In re Sharp* (1978), 65 Ill. App. 3d 945, 382 N.E.2d 1279), and increased needs of children may be presumed from the fact that children have grown older and the cost of living has risen. (*Swanson v. Swanson* (1977), 51 Ill. App. 3d 999, 367 N.E.2d 512.) Moreover, considerable discretion is placed in the trial court and an order of modification will not be disturbed on review, absent an abuse of discretion. *Edwards v. Edwards* (1970), 125 Ill. App. 2d 91, 259 N.E.2d 820.

In the present case, the court predicated its determination upon evidence that respondent is a practicing attorney and a partner in a law firm; that he earned income which has substantially increased since the entry of the original judgment in 1977; that the cost of living had increased greatly; that the minor children are now of school age and are no longer preschoolers; that although the evidence showed that petitioner's expense list was "somewhat inflated," the children's needs and activities had in fact greatly increased since the time of judgment.

In addition, our independent review of the record discloses that neither party disputes that petitioner, who is currently not employed, has personal assets which consist of her equity in the family residence and $2,400 in annual dividend income from stock investments. While we have duly noted, as respondent urges us, the increase in petitioner's second husband's income from his medical practice, we do not consider this to be a persuasive or a controlling factor.

■■■ The financial status of a divorced parent's current spouse should not be considered in determining the ability of that spouse to fulfill his or her duty to support. *Robin v. Robin* (1977), 45 Ill. App. 3d 365, 359 N.E.2d 809.

■■■ Accordingly, we do not believe the trial court erred in awarding an increase in support payments in light of the evidence.

Respondent also argues that the trial court improperly denied his supplemental petitions seeking recovery of a portion of the monthly payments received by petitioner during the period she resided with Dr. Brody prior to their marriage.

Section 510 of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1979, ch. 40, par. 510) provides in pertinent part that "the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to the filing of

the motion for modification \*\*\*."

Respondent argues, however, that his obligation to pay terminated automatically upon petitioner's cohabitation with Dr. Brody pursuant to section 510(b) (Ill. Rev. Stat. 1979, ch. 40, par. 510(b)), which provides that the obligation to pay future maintenance is terminated if the party receiving maintenance cohabits with another person on a resident, continuing, conjugal basis. We disagree with respondent's contention.

■■■ It is well settled that a party may not unilaterally reduce allowances on the basis of a claimed change in circumstances. Modification is considered a judicial function which is to be administered by the court in its discretion. (*Brandt v. Brandt* (1981), 99 Ill. App. 3d 1089, 425 N.E.2d 1251.) Since a court has no power to modify past due installments of maintenance (*Green v. Green* (1974), 21 Ill. App. 3d 396, 315 N.E.2d 324), a petition for modification or termination would only apply to payments owed subsequent to the date of the filing of the petition. *Kowalski v. Kowalski* (1981), 96 Ill. App. 3d 830, 422 N.E.2d 83.

Consequently, we find that the trial court properly denied respondent the retroactive recovery of a portion of the monthly payments.

Finally, we consider respondent's argument that a major portion of petitioner's attorney fees and costs were improperly assessed against him.

Respondent refers us to article XII of the agreement which states:

"It is understood and agreed that each party will pay his or her attorney's fees and court costs incurred either in connection with this Agreement or in connection with any proceedings involving this Agreement."

The judgment further provides:

"Notwithstanding such adoption of said Agreement herein [the divorce judgment], said Agreement, by its specific terms, shall not be merged into this Judgment but shall continue to have independent legal significance without the ambit of this Judgment and shall be subject to enforcement by either party as in the case of any other contract or Agreement, as well as enforced by this Court by way of summary proceedings."

Respondent argues that the parties' agreement concerning the payments of attorney fees is crystal clear on its face. We agree.

■■■ ■ It is well settled that in interpreting any contract, the intent of the parties is to be gathered by giving to the contract a fair

and reasonable interpretation, from the language of the entire contract, considered in light of the circumstances under which it was made. (*Stevens v. Fanning* (1965), 59 Ill. App. 2d 285, 207 N.E.2d 136.) This intention will be given full force and effect unless it is repugnant to another rule of law or is against public policy. *Cimino v. Cimino* (1968), 93 Ill. App. 2d 412, 236 N.E.2d 299.

In *Cimino*, the divorce judgment between the parties provided that each of the parties should bear his or her own fees arising out of the divorce proceedings. Finding the language of the agreement to be "precise, plain, clear, unequivocal and devoid of any ambiguity" (93 Ill. App. 2d 412, 416), the *Cimino* court concluded that, since there was no ambiguity in the agreement, no question of construction arose. The court then held that, under the circumstances of the case, it was neither reasonable, proper, nor just to tax the husband with the wife's attorney fees.

Here, as in *Cimino*, the terms of the agreement with respect to attorney fees are clear and unequivocal, and it was freely and knowingly entered into by both parties and approved by the court. Furthermore, petitioner has not demonstrated a financial inability to pay her portion of the fees as originally agreed. Under these circumstances, we find that a binding interparty contract resulted which is not repugnant to another rule of law nor is it against public policy.

Accordingly, we hold that the trial court improperly assessed a portion of petitioner's attorney fees against respondent.

For the preceding reasons, the order of the circuit court of Cook County is affirmed as to (1) the modification of the weekend joint custody residential schedule; (2) the characterization of respondent's monthly payments to petitioner as child support; (3) the increase of the amount of child support payments; and (4) the denial of respondent's supplemental petition seeking retroactive recovery of a portion of the monthly payments, and is reversed as to the assessment of a portion of petitioner's attorney fees against respondent, and remanded for further proceedings consistent with the views expressed herein.

Affirmed in part; reversed in part and remanded.

SULLIVAN, P.J., and MEJDA, J., concur.