*In re* MARRIAGE OF THERESA MARIE WEBBER, Petitioner-Appellant, and BRYAN DOUGLAS WEBBER, Respondent-Appellee.
Fourth District   No. 4—89—0248

Opinion filed December 5, 1989.

Gregory A. Scott, of Scott, Beeman & Scott, P.C., of Springfield, for appellant.

Diana N. Cherry, of Metnick & Barewin, of Springfield, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Petitioner Theresa Marie Webber appeals from an order of the circuit court of Sangamon County entered December 21, 1988, in which the court denied both her petition for rule to show cause why respondent Bryan Douglas Webber should not be held in contempt for his failure to pay arrearages in child support and her petition to modify his monthly child support obligation. In its order, the court granted respondent's petition to reduce his child support obligation by ordering a decrease in the monthly amount he had been required to pay.

On appeal, petitioner contends the court erred in ordering that decrease and, conversely, in failing to increase respondent's monthly support obligation. She further maintains the court erred in concluding no arrearages existed by finding the parties had agreed to abate the child support due from respondent for a period of time. For the reasons stated in this opinion, we affirm the order of the trial court in full.

The record in this cause reveals the parties married in 1976 at a young age. Petitioner testified she was still in high school at the time, and respondent had just graduated from high school. Respondent indicated that, during their marriage, he and petitioner made plans for both parties to further their education beyond high school. He said pe-

titioner planned to work upon her graduation from high school while respondent pursued a two-year degree. They hoped respondent's associate's degree would allow him to obtain better employment to support petitioner while she pursued a four-year degree. Respondent stated the parties then planned for him to return to school to obtain a four-year degree in engineering once petitioner received her bachelor's degree.

The record shows respondent did, in fact, receive an associate's degree in electronics, which allowed him to obtain a job repairing office machines and allowed petitioner to pursue her degree. The parties were unable to complete their educational goals during their marriage, however, for the parties dissolved their marriage in May 1982. Petitioner did obtain her associate's degree shortly following the dissolution and then continued attending college several more years and received a bachelor's degree.

Unlike petitioner, respondent did not pursue additional education for himself immediately following the dissolution. Instead, he continued to work at his job full time. However, respondent testified that, in August 1988, he voluntarily decided to return to school and reduce his hours of employment. He said he had obtained only a $2-an-hour increase in his pay over the 5½ years he had worked at his present job, and no opportunities existed for upward mobility. He maintained an engineering degree would provide him with a greater earning potential. He further added he thought it was a "good time" to further his education because petitioner had obtained full-time employment, he no longer had custody of their son and his girlfriend was willing to assist him financially.

Respondent petitioned the court to modify the judgment of dissolution to reduce his child support obligation. He stated that enrolling full time in college and reducing his hours of employment to 14 hours per week would result in a substantial change in circumstances, and he would no longer be able to afford the $150 per month in child support he had been required to pay for his two children. In its order, the court agreed a substantial change in circumstances had occurred and found the decrease in respondent's income had been made in good faith. It reduced respondent's child support payments to $125 per month.

Petitioner now maintains the evidence before the court did not support a finding that respondent's decision to return to school and reduce his hours of employment was made in good faith. She emphasizes his decision to enroll in college was made only after she had filed a petition seeking an increase in support. She further states that, at

the time of his decision, he was aware of his support obligation and the increasing needs of their children but still chose to enroll in daytime classes as a full-time student and to use his savings whenever necessary.

■■ A good-faith, voluntary change in employment which results in reduced financial ability can constitute a substantial change in circumstances justifying a reduction in a child support obligation by the court. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 416 N.E.2d 785.) The test for determining if a decision was made in good faith is whether the change was prompted by a desire to evade financial responsibility for supporting the children or to otherwise jeopardize their interests. (*Graham v. Graham* (1974), 21 Ill. App. 3d 1032, 316 N.E.2d 143.) Because the decision to modify child support payments rests within the sound discretion of the trial court, an order modifying such payments will not be overturned by this court on appeal absent an abuse of discretion.

■■ Based on the foregoing evidence, we conclude the record supports a determination respondent's decision to return to college and reduce the hours of his employment was made in good faith and not out of a desire to evade his financial responsibilities. Hence, the court did not abuse its discretion in ordering a reduction in his child support payments. For this reason, the court conversely did not err in refusing to increase the amount of child support as requested by petitioner.

Petitioner also maintains the court erred in finding no arrearages in child support payments existed. The parties apparently agree respondent did not pay child support from either October or November 1986 until April 1988, but contest whether they had agreed that child support payments would cease during that period of time.

The record indicates the parties' son lived with respondent during the period in question because petitioner was experiencing problems in disciplining him. Petitioner testified respondent took custody of the child but informed her he would not pay child support during the time the child lived with him. She said she let their son go with respondent but never agreed to waive his child support obligation. Respondent, on the other hand, testified he and petitioner agreed he would not have to pay child support during that time, as their son would live with him and their daughter, with petitioner.

We conclude the trial court could have believed the testimony of the respondent and determined the parties had agreed to waive his child support obligation during the period in question. Petitioner urges the evidence does not support such a determination because, on

a previous occasion, the parties notified the court when they agreed to a waiver of support, and no similar notification was sent on this occasion. However, respondent testified he did not notify the court on this occasion because petitioner told him she would inform the court of their agreement, which testimony could also have been believed by the court.

While we conclude the trial court could have properly found an agreement existed between the parties, we note the supreme court has recently decided that agreements between former spouses to modify child support obligations are not enforceable absent judicial approval. (*Blisset v. Blisset* (1988), 123 Ill. 2d 161, 526 N.E.2d 125.) Thus, unless the doctrine of equitable estoppel applies here, petitioner is entitled to collect the delinquent child support payments from respondent. A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. *Dill v. Widman* (1952), 413 Ill. 448, 455-56, 109 N.E.2d 765, 769.

In *Blisset,* the former wife agreed not to pursue her claim to collect past-due support payments and to waive all future support in exchange for the former husband's agreement to relinquish his visitation rights with the children. The supreme court reasoned, however, that, because the former husband knew his visitation rights could not be forfeited, his reliance on his former wife's agreement was unreasonable. It also determined relinquishing visitation rights and failing to anticipate unpaid support payments were insufficient to constitute the detriment necessary to support a claim of equitable estoppel. Therefore, that doctrine was inapplicable under the facts presented there.

The facts of the instant case are distinguishable from those in *Blisset.* Here, respondent took custody of his son with the understanding he would not have to continue to pay child support so long as the son remained with him. In becoming the custodial parent of his son and providing for his son's needs while he lived with him, respondent suffered a detriment. His reliance on that agreement was not unreasonable, either, for he and petitioner had entered into similar agreements in the past without incident. For these reasons, we conclude the trial court's determination to deny petitioner support arrearages is supported on a theory of equitable estoppel.

We affirm the decision of the circuit court of Sangamon County.

Affirmed.

SPITZ and STEIGMANN, JJ., concur.