*In re* MARRIAGE OF MARTIN FRANK MITTEER, Petitioner-Appellant, and SHARON ELAINE MITTEER, n/k/a Sharon Trombley, Respondent-Appellee.

Fourth District   No. 4—92—0447

Opinion filed February 4, 1993.

Joseph W. Vigneri, of Vigneri Law Office, of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellee.

JUSTICE LUND delivered the opinion of the court:

Petitioner Martin Mitteer appeals from the judgment of the circuit court of Macon County denying his petition to abate his child support payments and granting the petition of respondent Sharon Mitteer Trombley to increase petitioner's child support payments and order him to pay part of certain orthodontic expenses incurred by Sharon on behalf of the parties' minor child. We affirm.

The parties were divorced on June 22, 1984. Sharon was awarded custody of the parties' minor child, Nicole, who was then three years old. Martin was ordered to pay child support of $100 per week. He was also ordered to maintain medical, dental, and prescription drug insurance on Nicole through his employer and to pay 50% of all uncovered costs if he was unable to maintain such insurance. At the time of the divorce, Martin was 27 years old and had a two-year trade school degree in opticianry. He had been employed by Weisser Optical

for seven years as an optician. At the time of the dissolution Sharon resided in the State of Michigan, where she continued to reside at the time of the hearing which gave rise to this appeal.

In order to attain a full understanding of our decision, a short history of post-divorce litigation in this case, as revealed by the record on appeal, is necessary.

On March 23, 1987, Martin's child support payments were, by agreement, reduced to $65 per week. Martin was granted an abatement of child support payments during his summer visitation with Nicole. He had a child support arrearage (in an amount not indicated by the record on appeal) which, as part of this agreement, he was ordered to pay in full within six months. Pursuant to a petition for adjudication of civil contempt which alleged that Martin had not paid his arrearage as agreed, Martin was found to be in contempt on October 30, 1987, but was allowed to pay $15 per week on an arrearage of $2,965 in addition to his current support payments of $65 per week.

Another petition for adjudication of civil contempt was filed by Sharon in May 1989, alleging that Martin was in arrears on his current child support payments in the amount of $455, in addition to $1,790 of the previous arrearage left to be paid under the court's October 1987 order. Sharon also filed a petition to increase Martin's child support payments. Martin filed his own petition to modify, asking that Sharon be ordered to assume some of the transportation responsibilities for his visitation and requesting additional abatement of his child support payments for periods he alleged he had Nicole for visitation. The court entered an order on May 31, 1989, disposing of all pending petitions, whereby Martin's child support was increased to $90 per week and $10 per week on the arrearage. The court refused to make any change in transportation responsibilities or to grant Martin additional abatement of his child support payments.

Sharon filed another petition for adjudication of civil contempt in March 1992, alleging that Martin was in arrears on his current child support payments in the amount of $1,660. He had apparently paid his previous arrearage. Sharon also filed another petition to modify, seeking an increase in Martin's child support payments, and an order requiring him to provide health, hospitalization, and orthodontic insurance for Nicole and pay her uncovered orthodontic expenses. Yet another petition for adjudication of civil contempt was filed in June 1992, alleging that Martin was in arrears in his current child support payments in the amount of $490. In April 1992, Martin filed a petition to modify, asking that his child support payments be abated for a period of two years, stating that he intended to terminate his employ-

ment and enroll in Sangamon State University in Springfield to pursue his bachelor's degree in a business-related field. In that petition, Martin alleged that (1) his present employment required him to possess a great degree of knowledge and expertise in business and financial matters—fields in which he has had no formal education or training; (2) in order to "advance his career and business pursuits," he was taking steps to enroll in college as a full-time student to secure this education; and (3) as a result of his enrollment, he would be unable to continue his present employment and to pay his child support payments.

A hearing was held on these petitions on May 1, 1992, where it was indicated to the court that Martin had paid his child support arrearage in full two days prior to the hearing. Sharon testified that she works as a secretary in Michigan. Her financial affidavit shows she had a net income from her employment of just over $12,000 per year. Her husband had been laid off and was receiving unemployment benefits of $272 per week. While he was working, their combined gross income in 1991 was approximately $43,000. Her husband was maintaining health insurance on Nicole, but that ended with his layoff. Sharon stated that she wished to have Martin's child support raised to at least $100 per week, which was the amount set in 1984. In support of this request, she testified that Nicole's needs had increased. Her clothes were now more expensive, she eats more food, and she is in Girl Scouts. The testimony also indicates that Nicole has required braces on her teeth. Sharon stated that Martin was aware of Nicole's need for braces. The total cost of the braces was $2,800, approximately $600 of which was covered by insurance. Sharon testified she had paid about $350 of this expense, but a balance of $1,852.50 remained to be paid. The total amount not covered by insurance is $2,202.50, of which she testified she wanted the court to order Martin to pay one-half. Sharon stated she had signed a contract with the orthodontist in 1991 for the total cost of the braces and is paying the balance in installments. She testified she did not know whether Martin had insurance on Nicole.

Martin testified that he is 35 years old and living in Decatur with his fiancee, Cathy Grinestaff. She owns, and is president of, G.M.S., Incorporated (GMS). That corporation owns and operates American Vision Centers where Martin worked as an optician. Martin admitted that "G.M.S." stands for Grinestaff, Mitteer and Sanover, but denied any involvement in the corporation or that he had placed any of his assets into the corporation. Martin stated he and Grinestaff are buying a home together and she contributes her own income to their liv-

ing expenses. Grinestaff's daughter is also living with them. Martin testified that he has no bank accounts—that he cashes his paycheck. He has a car which is paid for. He borrowed the money from Grinestaff to pay his child support arrearage. In April 1992, he enrolled in Sangamon State University as a full-time student. Martin was on an unpaid leave of absence from his job at the time of the hearing.

Martin testified that he has always had insurance on Nicole and that she was covered at the time of the hearing through his former employer, GMS.

Martin's financial affidavit was presented to the court. It lists some hefty living expenses, which he indicates are for his entire household. We assume this means for him, Grinestaff, and her daughter. For example, he lists his house payment as $899.25 per month, but he does not indicate what portion he pays. He also lists $800 per month for groceries and household supplies, but does not indicate what part is attributable to his own support. In addition, he lists $480 per month for restaurant meals and $500 per month for personal items and clothes but, again, he does not state what portion of those expenses is attributable to himself. He does not list Grinestaff's income and there was no testimony at the hearing as to the amount of her income. The only debts he lists are $450 in credit card debts and two loans totaling $2,770 from Grinestaff for child support and summer tuition. His affidavit also shows his net employment income was $2,800 per month prior to quitting his job to return to college.

Martin admitted that his income had increased substantially since the last child support modification in 1989. He stated that Grinestaff had told him verbally that it would be in his best interest to continue his education so that he could be more of an asset to his employer when it was completed. He has not been told that he will lose his optician job if he does not get his degree. He did not handle any of his employer's books, nor is he a manager of the corporation. He was not qualified to do this—his job was as an optician. His former employer currently hires outside people to manage its finances, which Martin stated was very expensive.

Martin testified that Sangamon State does not offer the courses he is taking on a part-time basis and he elected not to enroll in Millikin University in Decatur because of the expense. He can obtain his degree in two years by going straight through both summers. He stated he did not believe he could handle even part-time employment because of the drive to and from the university and demands for his class and study time.

He testified his career objective is to be able to manage groups of stores. He has observed his former employers and other optical businesses fail due to competition in the industry. He believes his lack of a four-year degree has held him back over the past seven years. Martin testified that when he has completed his education, he can go back to his old position as an optician, if it is available. He has not been promised a higher salary once he gets his degree.

While in school, Grinestaff will support him and pay all household bills. She will also be paying his and Nicole's health insurance. However, Martin testified that Grinestaff would not agree to support Nicole unless she was living with them. He indicated he believed Sharon could support Nicole on her $15,000-per-year gross income.

On May 4, 1992, the trial court entered a judgment denying Martin's petition to abate child support, increasing his support payments to $100 per week and ordering him to maintain health insurance on Nicole, to pay one-half of her future expenses not covered by insurance, and to contribute $1,000 toward Nicole's orthodontic expense. The court made certain findings in its judgment, among which are the following: (1) Martin was recently earning $52,000 per year and Sharon earns $15,000 per year; (2) Martin's income had increased substantially since May 1989 and Nicole's needs have increased; (3) Martin's proposal to have his child support abated was irresponsible, was not made in good faith, and was likely to cause Nicole to become a public charge; (4) Martin could attend the local junior college at night to obtain the business courses he desires, although he would not be able to obtain a four-year degree there; (5) as to the $2,800 orthodontic expense, there is a difference between an already incurred bill in total and one that has been incurred but being paid in installments; and (6) if Grinestaff wants to support Martin, she should also support his child.

On appeal, Martin first takes issue with the trial court's order requiring him to pay $1,000 of Nicole's already incurred orthodontic expense.

We note that the judgment of dissolution ordered Martin to maintain medical, dental, and prescription drug insurance on Nicole through his employer and, if he were unable to do so, he was to pay 50% of all uncovered costs incurred by Nicole. The undisputed testimony was that Martin had maintained such insurance through his various employers and that Nicole was currently covered at the time of the hearing.

■ Martin argues that under section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch.

40, par. 510(a)) he may not be required to pay this orthodontic expense, because it was incurred prior to the filing of Sharon's petition to modify. Section 510(a) of the Act provides, in relevant part:

> "Modification and termination of provisions for maintenance, support, educational expenses, and property disposition. (a) Except as otherwise provided in paragraph (f) of Section 502, in subsection (d), clause (3) of Section 505.2, and in subsection (b) of this Section, the provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of the motion for modification and only upon a showing of a substantial change in circumstances." Ill. Rev. Stat. 1991, ch. 40, par. 510(a).

In support of his argument, Martin cites the case of *In re Marriage of Van Winkle* (1982), 107 Ill. App. 3d 73, 437 N.E.2d 358. In that case, the custodial mother petitioned the court to order reimbursement from the father for legal and medical expenses she had paid, prior to the filing of her petition, in connection with their son's juvenile delinquency proceeding. The circuit court ordered the father to reimburse the mother for one-half those expenses. The appellate court reversed this order. The court found that, in effect, the mother's petition asked for a retroactive modification of the divorce decree, requiring the father to contribute to these expenses, which was not permitted by section 510(a) of the Act. The court noted that the mother had not discussed the expenses with the father or requested contribution from him prior to filing her petition. *Van Winkle*, 107 Ill. App. 3d at 80, 437 N.E.2d at 364.

We are cognizant that many would consider dental expense distinct from orthodontic treatment. While such treatment may have long been considered cosmetic, we believe the time has come to reject that conclusion. Proper dental treatment, including orthodontic corrections, has become accepted based on personality development and strictly health reasons. It is now understood that as the human animal has developed, certain mouth structures have changed and are not sufficient to hold the number of teeth which naturally grow. Without proper orthodontic work, dental problems and appearance problems develop. By this decision, we hold that the provision for dental insurance and dental expense includes orthodontic treatment. If Martin's dental insurance did not include orthodontic expenses, then the existing support order required him to pay one half the uncovered expense. Thus, the $1,000 award was proper.

Martin next contends the trial court erred in denying his petition to abate child support payments. Martin argues the unrebutted evidence at the hearing established that a bachelor's degree in business administration and finance would provide him with greater job security and career growth potential in the face of what he claims is fierce competition in the optical industry. He claims it is undisputed that he was told he must further his education to be more of an asset to his current employer.

Modification of child support payments lies within the sound discretion of the trial court. That discretion will not be disturbed on appeal absent an abuse thereof. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233; *In re Marriage of Kessler* (1982), 110 Ill. App. 3d 61, 73, 441 N.E.2d 1221, 1229.) An abuse of discretion exists when no reasonable person would agree with the trial court's decision. *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 260, 547 N.E.2d 590, 596.

It has been recognized that a good-faith, voluntary change in employment which results in diminished financial ability may constitute a substantial change in circumstances justifying a reduction in child support payments. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 132, 416 N.E.2d 785, 790; *In re Marriage of Lyons* (1987), 155 Ill. App. 3d 300, 305, 508 N.E.2d 458, 462.) The test for determining if a decision was made in good faith is whether the change was prompted by a desire to evade financial responsibility for supporting the children or to otherwise jeopardize their interests. *In re Marriage of Webber* (1989), 191 Ill. App. 3d 327, 330, 547 N.E.2d 749, 751.

Martin testified that he wanted to go back to college because of concern about his future in an increasingly competitive industry. However, we note that his petition to modify alleged his "present employment requires him to possess a great degree of knowledge and expertise in business and financial matters, yet he has had no formal education or training with respect thereto." Martin presented no evidence that his job with GMS as an optician required him to have anything more than the two-year degree he now has. His rationale for going back to school is illustrated by the following testimony:

"[Sharon's counsel:] In your motion to abate your support you indicate that your employment requires you to obtain a business degree, is that correct?

[Martin:] The market of the optical industry as a whole and it is very, very competitive. There's [*sic*] more major players in the environment today than there were 2 years ago or 10 or 15 years ago and the people who are buying up the smaller com-

panies or corporations and people who are buying up these smaller companies, they want people who have business management skills, business administration, marketing, financing.

* * *

[Martin's counsel:] Why, if at all, do you have an interest in the business or management of the optical business? I mean, why are you interested in that, if you are?

[Martin:] Well, in order for me to continue on in the business and to further my career in the business, I don't want to be that person you see saying, how may I help you, everyday from that front door. I want to be able to manage groups of stores, understand the business, marketing finances. I can't do that today. That's what's held me back the last 5, 6, 7 years. There is just no one out there who will give me opportunities because I do not have the credentials."

We note there was no independent evidence adduced by Martin that a four-year degree is necessary to secure his future within the optical industry. Martin points to his testimony that no other employee at GMS has any business education and training and that GMS currently hires outside personnel, at great expense, to assist in administration, thus implying that he could perform these responsibilities with his new degree. However, Martin does not plan to obtain a job utilizing his new degree when he receives it. He testified that he would return to his optician job at GMS, if available. This assertion does not square with Martin's testimony that he was told he should go back to school in order to be a greater asset to GMS.

Martin claims his situation is similar to that in the *Webber* case cited above. In *Webber,* the parties were married just out of high school. They had made plans for each of them to further their education. The wife worked while the husband went to school. The husband received a two-year degree in electronics and found a job so that the wife could pursue her college education. After the wife finished her degree, the plan was that she would work while the husband pursued his engineering degree. However, the wife was unable to finish her degree, because dissolution of the marriage intervened in 1982. She did complete her degree over several years after the dissolution, but the ex-husband continued to work at his job. In 1988, he decided to reduce his hours of employment and return to school to obtain his engineering degree. He had received only a $2-an-hour increase in his wages over 5½ years, and no opportunities existed for advancement. He filed a petition asking for a reduction in his child support payments for the parties' two children. He testified that he decided it

was a good time to further his education because his ex-wife was employed full-time and his girlfriend was willing to assist him financially. The trial court granted the petition and reduced his payments by $25 per month. This court affirmed, holding that the trial court was justified in finding on the evidence presented that the husband's decision to return to school and reduce his hours of employment was made in good faith and not from a desire to evade financial responsibility for his children. *Webber,* 191 Ill. App. 3d at 329-30, 547 N.E.2d at 750-51.

Contrary to Martin's argument, there are some important differences between *Webber* and the instant case. In *Webber,* the parties had agreed, prior to the dissolution, on a plan to educate themselves which could not be accomplished because of the dissolution. The ex-wife then attended college after the dissolution and became employed on a full-time basis. In addition, the ex-husband only had very minimal increases in wages in more than five years at the same job. In contrast, Martin's income at his present job increased from a 1989 gross income of $36,400 to $52,000 at the time of the hearing below. Further, the ex-husband in *Webber* merely reduced his employment hours and requested a reduction in child support, not an abatement. Martin has quit his job altogether. Although Martin's petition contained a general prayer for relief, he specifically stated he would have no income and requested an abatement. He argues on appeal that he was asking for an abatement or, in the alternative, a reduction. However, he did not make that request in the trial court. It is true that the husband in *Webber* had a child support arrearage at the time he filed his petition, but this court found that the wife was equitably estopped from collecting the arrearage because the husband had taken custody of their son, with the understanding that he would provide for the child's needs and would not have to pay child support while he had custody. In contrast, Martin has a history of child support arrearage. The record indicates that on one occasion in 1987 he was found to be in contempt for failing to pay his arrearage as agreed. We do not hold that the mere existence of arrearage precludes a noncustodial parent from receiving an abatement of child support in the proper circumstances. However, this factor does have a bearing on Martin's good faith in seeking an abatement of his child support.

■ Martin produced no evidence other than his own testimony to prove his claim that a four-year degree was necessary to secure his future in the optical industry. Thus, Martin's case rested solely on his credibility as a witness before the trial court. It is the function of the trier of fact to determine the credibility of witnesses and the weight

to be given their testimony. *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 912, 466 N.E.2d 925, 930.

Martin finds fault with the trial court's finding that if Martin's girlfriend wanted to support him, she should also support his child. While we agree this finding was improper, there were other grounds upon which the trial court's decision could properly rest. We therefore find that the trial court did not abuse its discretion in denying Martin's request for an abatement of his child support payments.

Martin's final claim of error lies in the trial court's decision to increase his child support payments from $90 to $100 per week. Martin argues that Sharon failed to show any increased need of Nicole and that his income had been reduced due to his leave of absence from his employer. Martin believes the trial court improperly imputed his live-in girlfriend's income to him by finding that if his girlfriend is willing to support him, she should also support his child. Martin also argues the trial court erred in considering Sharon's husband's unemployed status, claiming the employment status of a party's spouse is not relevant to a child support determination.

■ Once a court finds that a substantial change in circumstances has been shown, it must determine the amount of increase or decrease in child support by considering the factors set forth in section 505(a)(2) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 505(a)(2)). Those factors include the financial resources and needs of both parents and the standard of living the child would have enjoyed had the marriage not been dissolved. Child support may be increased upon a showing of an increased ability of the noncustodial parent to pay, regardless of whether the needs of the child have increased. (*Bussey*, 108 Ill. 2d at 296-98, 483 N.E.2d at 1233-34; *Wilson v. Wilson* (1988), 166 Ill. App. 3d 1035, 1038, 520 N.E.2d 1230, 1232.) Martin admitted that his income had increased since 1989 and, in fact, the record reflects a substantial increase. Having ruled that Martin was not entitled to quit his job and receive an abatement of his child support payments, the trial court was not bound to reward him for his actions by refusing to increase child support because of his unemployment. In addition, we do not find that the trial court imputed Grinestaff's income to Martin in increasing his child support payments. The court's comments concerning Grinestaff appeared to refer only to Martin's petition to abate his child support payments.

The financial status of a divorced parent's current spouse should not be considered in determining the ability of that parent to fulfill his or her duty of support. (*Kessler*, 110 Ill. App. 3d at 73, 441 N.E.2d at 1229.) However, this does not prevent the court's consider-

ation of the income of a parent's spouse when considering the needs of that parent and his or her family. See *In re Marriage of McBride* (1988), 166 Ill. App. 3d 504, 519 N.E.2d 1095; *Edwards v. Edwards* (1970), 125 Ill. App. 2d 91, 259 N.E.2d 820.

The evidence in the instant case showed that Sharon earned $15,000 per year at her place of employment, that her husband had been laid off, and that her husband's employer had told him it was unlikely he would be recalled to work. The evidence also showed their combined income to be in the neighborhood of $40,000 when they were both working. The court properly considered these factors in assessing the resources and needs of Sharon and her family. These determinations cannot be made in a vacuum, and case law does not require them to be.

We also note that the increase in child support still leaves Martin's child support payments below the 20% guidelines and that the court did not make any findings to justify this deviation as required by section 505(a)(2). However, since Sharon has not filed a cross-appeal, we may not consider this point. We find no error in the trial court's decision to increase Martin's child support payments.

The judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.