Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/31/2024 09:06 AM CDT

Lizeth E., now known as Lizeth S., appellee,
v. Roberto E., appellant.
___ N.W.3d ___

Filed October 31, 2024.    No. S-23-800.

1. **Modification of Decree: Child Custody: Visitation: Child Support: Appeal and Error.** Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion.
2. **Child Support: Equity.** Child support proceedings are equitable in nature.
3. **Courts: Equity.** Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation.
4. **Child Support: Rules of the Supreme Court.** The Nebraska Child Support Guidelines expressly permit a deviation from the guidelines for juveniles placed in foster care.
5. **Appeal and Error: Words and Phrases.** Plain error exists where there is an error, plainly evident from the record, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.

Appeal from the District Court for Lincoln County, CINDY R. VOLKMER, Judge. Affirmed in part, and in part vacated and remanded for further proceedings.

Todd M. Jeffers, of Jeffers Law Firm, for appellant.

No appearance by appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

The issues raised in this modification of a dissolution decree appeal relate to Roberto E.'s child support obligation, particularly to child support he paid while his children were not in his former wife's custody. Upon our de novo review of the record for an abuse of discretion, we affirm the district court's determination that it lacked jurisdiction to modify custody while a child's case remained pending in juvenile court. However, we vacate the judgment and remand the cause to the district court to consider whether a deviation from the child support guidelines is appropriate under the circumstances.

## BACKGROUND

We start by summarizing the dissolution of marriage proceedings, including the child support ordered. Then, we touch on the juvenile court cases involving the children and a bridge order concerning one child. Finally, we discuss the complaints to modify the decree, the evidence adduced at the hearing, and the district court's order from which this appeal is taken.

### Marriage and Dissolution

In 2011, Roberto and Lizeth E., now known as Lizeth S., married and a child, Roberto E., Jr. (Roberto Jr.), was born to the marriage. Roberto subsequently adopted Lizeth's four children: Andres E., Angel E., Adrian E., and Adriana E.

In 2014, Lizeth filed a complaint in the Lincoln County District Court to dissolve the marriage. In 2017, the court entered a decree of dissolution. It awarded Lizeth physical and legal custody of all five children and ordered Roberto to pay monthly child support of $1,333 for all five children.

### Juvenile Court Cases

While in Lizeth's custody, each child was the subject of a juvenile court petition alleging the child to be a "juvenile" as

described in Neb. Rev. Stat. § 43-247(3) (Reissue 2016). As a result, the children were, at various times, put in placements outside of Lizeth's home.

• Andres was on probation and in out-of-home placements, including with relatives, from December 9, 2020, to February 5, 2021, and from March 16, 2021, to June 22, 2023.
• Angel and Adrian were removed from Lizeth's custody on August 4, 2021, were placed in foster care, and were returned to Lizeth's home in December 2022.
• Adriana was removed from Lizeth's custody on March 8, 2021, and has remained in foster care. In a June 2023 order, the juvenile court approved a permanency goal of guardianship.
• Roberto Jr. was removed from Lizeth's custody on August 4, 2021, was placed in foster care, and has remained in Roberto's custody since November 19.

### Bridge Order and Orders
### Nunc Pro Tunc

In May 2022, the county court for Frontier County, acting as a juvenile court, entered a bridge order placing Roberto Jr. in the sole custody of Roberto. The order transferred jurisdiction to the Lincoln County District Court. Except for this bridge order, the record before us does not disclose any juvenile court order addressing child support or any attempt by any party in juvenile court to seek any such order.

Roberto subsequently sought an order nunc pro tunc to reflect the custody change. He attached to his motion an "accurate split custody child support calculation." The court entered the requested order, finding that the 2017 child support order should be "modified to reflect the Bridge Order split custody arraignment [sic]." The court attached to its order Roberto's split custody child support calculation.

Shortly thereafter, Roberto filed another "Motion Nunc Pro Tunc." He alleged that the child support calculation attached to the order nunc pro tunc was incomplete, because it contained only two of four pages. Roberto attached to his motion an updated calculation.

In July 2022, the district court entered another order nunc pro tunc. It found that "[t]here has occurred a material and a substantial change in circumstances since the entry of the Decree of Dissolution of Marriage dated January 22, 2017." It stated that the updated split custody child support calculation modified a paragraph in the original decree and that the first payment was due and payable on December 1, 2021.

The district court attached to its order an updated split custody child support calculation. According to the worksheet, Roberto's child support obligation was $779 per month when four of the children were in Lizeth's custody and one child was in Roberto's custody. The worksheet showed the amount of support for each child was $353.20, with Lizeth's share being $126.80 and Roberto's share being $226.40. The worksheet indicated that Adriana was in Lizeth's custody.

## MODIFICATION PROCEEDINGS

In September 2018, Lizeth filed a complaint, styled as an application, to modify parenting time. Two months later, she filed a motion to modify child support based on an alleged increase to Roberto's income. In response, Roberto denied there was a material change in circumstances. Later, in a March 2021 response to an order to show cause, Roberto alleged that a material change in circumstances occurred due to a temporary order that changed the parenting plan and due to Lizeth's difficulty with being the children's physical custodian. These filings remained pending until 2023.

After this extended delay, in March 2023, Roberto filed a complaint, styled as a motion, seeking modification. He alleged that the orders and findings in the children's juvenile cases constituted a material change of circumstances and that only in Roberto Jr.'s case had a bridge order been sent to the district court. Roberto alleged that the decree and orders in this case "need corrected, retroactively Pro Nunc Tunc, and currently moving forward to accurately reflect the custody changes, and changes to payee, ordered by these juvenile cases."

According to Roberto, the split custody calculation attached to the July 2022 order nunc pro tunc accurately provided the child support calculation needed to adjust the juvenile case custody changes. He pointed out that the calculation showed Lizeth's share of childcare costs to be 35.9 percent and Roberto's share to be 61.1 percent. Roberto asserted that "[t]he multiple [j]uvenile cases that have modified custody has failed to update the child support owed by the parties correctly." He alleged that the State improperly collected from him 100 percent of child support for the children who were in foster care and state custody and that the State opted not to use its authority under Neb. Rev. Stat. § 43-290 (Reissue 2016) to request Lizeth pay a reasonable amount for foster care.

Roberto sought various relief. The requested relief included an order nunc pro tunc updating the child support order to reflect custody changes contained in the juvenile court orders, a judicial review of a seizure of Roberto's property, an order preventing child support enforcement from releasing Roberto's seized property until after a judicial review, and an evidentiary hearing providing Roberto with an opportunity to offer proof that past due child support had been satisfied in whole or in part.

In August 2023, the district court held a hearing on the three pending complaints to modify. Roberto provided testimony and offered numerous exhibits. Although Lizeth did not appear personally, she was represented by counsel.

Roberto testified that his parenting time and communication with the children ceased in August 2018. He was falsely accused of abusing them, resulting in criminal charges. The charges led to Roberto's arrest, payment of a $50,000 bond, and incurrence of attorney fees. The criminal charges were dropped 2 years later. After the charges were dropped, Roberto communicated with the Nebraska Department of Health and Human Services (DHHS) about resuming parenting time with Roberto Jr., who was in foster care.

Roberto testified that the criminal charges caused him to become delinquent in child support payments. He explained that he lacked money for child support due to having to pay for an attorney and related legal expenses. Roberto testified that the delinquency occurred "pretty much about the time that [he] had to hire the criminal attorney."

Child support payment history data for Roberto showed that of Roberto's $779 monthly payment, $584.25 was allocated to Lizeth and $194.75 was allocated to DHHS. It also showed that Roberto became delinquent on his child support obligation and first accumulated arrears in December 2018. According to a payment history report up to March 2, 2023, the balance of Roberto's child support payment due to Lizeth amounted to $49,381.34 and the balance due to DHHS was $11,354.75.

Ultimately, DHHS garnished Roberto's bank account, seizing $59,692.88 of his property under Nebraska's bank match system.[1] Of that amount, $48,737.82 has been disbursed to Lizeth.

Although Roberto assigns error to the district court's order in this dissolution modification action, he also filed a separate administrative appeal concerning the seizure. Following an administrative hearing, the DHHS hearing officer determined that "the action of DHHS was proper." In April 2023, Roberto filed a notice and petition for review of the garnishment in the Lincoln County District Court. That case remains pending.

## DISTRICT COURT'S ORDER

In September 2023, the district court entered an order concerning the parties' collective filings. The court began with an analysis of the custody of the five children. It stated that Andres was in out-of-home placements a total of 31 months from December 2020 to June 2023 and that Angel and Adrian were both placed in foster care for 17 months. These three children were living with Lizeth at the time of trial. Adriana

---

[1] See Neb. Rev. Stat. §§ 43-3328 to 43-3339 (Reissue 2016).

had been in foster care since March 2021 and remained there at the time of trial. Roberto Jr. was removed from Lizeth's home on August 4, 2021, and placed in foster care. In November 2021, Roberto Jr. was placed with Roberto and has remained living with him.

The court stated that custody of Roberto Jr. was finalized by the bridge order, and it found no material change in circumstances to warrant a custody change for him. The court stated: "Because the juvenile cases are ongoing for Andres, Angel, Adrian, and Adriana, this Court does not have jurisdiction to determine custody of those four minors. Placement of the minors is under the scrutiny and control of [DHHS]." The court further stated: "To the extent this Court has the power to determine custody of Andres, Angel, Adrian, and Adriana, it declines to do so. The parties involved in the juvenile proceedings are more informed as to the best interests of these children at this time."

The court next addressed child support credits. Roberto requested credit toward his child support obligation for time that the children were not in Lizeth's custody. Citing *Truman v. Truman*,[2] the court recognized the rule against modification of accrued child support unless equitable estoppel applied. The court set forth the elements of equitable estoppel and found that they were not present.

The court denied Roberto's request to credit back child support for the time the children were not with Lizeth. The court rejected Roberto's claim that he paid child support to Lizeth for children who were not in her home, observing that $11,103.31 of the $59,841.13 garnished from Roberto was sent to DHHS.

Turning to child support moving forward, the court recognized that the July 2022 order nunc pro tunc accounted for the change in custody of Roberto Jr. The court stated that although Adriana was not in Lizeth's custody, she still needed

---

[2] *Truman v. Truman*, 256 Neb. 628, 591 N.W.2d 81 (1999).

support. It observed: "Exhibit 61 indicates that the State of Nebraska is pursuing a child support order against Lizeth for the benefit of Adriana. Additionally, exhibit 62 reflects that the DHHS is taking a portion of Roberto's current child support obligation." Based on that information, the court found that Lizeth was not receiving a windfall in child support for a child that was not in her custody.

Finally, the court reviewed the seizure of Roberto's property related to the garnishment of his bank account. The court noted that when a minor child was first removed from Lizeth's home in December 2020, Roberto was already in arrears by $34,423.37. The court stated that because Lizeth did not receive a windfall in child support for children she did not have in her home, there was no error in the garnishment of $25,417.76 for child support accrued from December 2020 to March 2023. Accordingly, the court found that Roberto was not entitled to the return of any of the garnished funds because no credit had been granted to him and because the garnished funds were properly divided between Lizeth and DHHS.

Roberto appealed, and we moved the case to our docket.[3]

## ASSIGNMENTS OF ERROR

Roberto assigns that the court erred in (1) finding no material change in circumstances regarding Adriana, (2) approving a child support order contrary to the child support guidelines, (3) holding that only equitable estoppel would allow giving him credit for child support that was paid when the children were not in Lizeth's custody, (4) failing to retroactively adjust the child support payments to reflect custody placements from the time of the modification filings, and (5) approving the garnishment of his bank account for an inaccurate amount.

## STANDARD OF REVIEW

[1] Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion.[4]

## ANALYSIS

### Material Change in Circumstances

Roberto argues that the district court erred in determining that there was not a material change in circumstances regarding Adriana's custody. Rather than finding no material change in circumstances, the court's order made no determination concerning a material change in circumstances with respect to Adriana.

The district court acknowledged several points raised by Roberto. It recognized that Adriana has been in foster care since March 2021, that Adriana may never return to Lizeth's home, and that Adriana's juvenile case was ongoing. But the court determined that it lacked jurisdiction to determine Adriana's custody because her juvenile case had not concluded. The court stated that to the extent it had the power to determine custody, it declined to do so as a result of the pending juvenile court proceeding.

In determining whether the district court erred in that regard, we start with provisions in the Nebraska Juvenile Code.[5] Section 43-246.01 sets forth categories of juveniles over which the juvenile court has either exclusive or concurrent original jurisdiction. The juvenile court has exclusive original jurisdiction over an individual adjudicated under § 43-247(3)(a).[6] Adriana is such an individual. Exercising its jurisdiction, the juvenile court awarded Adriana to the care of DHHS for placement.[7] DHHS placed her in foster care.

---

[4] *Mann v. Mann*, 316 Neb. 910, 7 N.W.3d 845 (2024).

[5] See Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Reissue 2016, Cum. Supp. 2022 & Supp. 2023).

[6] See § 43-246.01(1)(a).

[7] See § 43-285.

The juvenile court possesses continuing jurisdiction over a child such as Adriana.[8] It is empowered to order a change in the custody or care of any such juvenile if it appears to the court that such a change would be in the juvenile's best interests.[9]

The juvenile court is authorized to terminate its jurisdiction. It may do so by transferring jurisdiction over the juvenile's custody, physical care, and visitation to the district court through a bridge order.[10] But the juvenile court may do so only if four criteria are met.[11]

Here, two criteria for entry of a bridge order are unsatisfied.[12] Thus, the juvenile court could not transfer jurisdiction over Adriana's custody and care to the district court. Because jurisdiction over such matters remains with the juvenile court, the district court did not err or abuse its discretion in declining to make a custody determination regarding Adriana.

### Child Support

The heart of Roberto's appeal concerns his child support obligation for periods when one or more children were in neither parent's custody. In considering his arguments, we are mindful of our retroactivity jurisprudence. We have held that child support payments are a vested right of the payee in a dissolution action as they accrue and that such payments may be changed only by modification of the decree based on a material change in circumstances.[13] Accordingly, we have

---

[8] See § 43-295.

[9] *Id.*

[10] See § 43-246.02(1).

[11] *Id.*

[12] See § 43-246.02(1)(c) and (d) (respectively, safe placement with legal parent and juvenile court determination that its jurisdiction should end "once orders for custody, physical care, and visitation are entered" by district court).

[13] See *Berg v. Berg*, 238 Neb. 527, 471 N.W.2d 435 (1991).

stated that a court may not forgive or modify past-due child support, but may modify the amount of child support becoming due in the future.[14]

[2,3] The district court's conclusion that it lacked jurisdiction to modify Adriana's custody did not leave it powerless over Roberto's request to modify child support. That is because child support proceedings are equitable in nature.[15] Where a situation exists that is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation.[16]

Roberto argues that the split custody child support order is arbitrary. He bases this argument on the worksheet's showing that Lizeth has custody of four children and that Roberto has custody of one child when, in actuality, Lizeth has custody of three children, Roberto has custody of one child, and DHHS has custody of one child. In Roberto's motion to modify child support, he alleged that the State was collecting all of the support from him and none from Lizeth. He asserted that Lizeth, for the foreseeable future, should be ordered to pay her share of child support for the periods when the children were not in her care, which was at least 59 months.

[4] The Nebraska Child Support Guidelines apply as a rebuttable presumption.[17] "All orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied."[18] The guidelines expressly permit deviations from the guidelines under certain circumstances.[19]

---

[14] *Id.*

[15] See *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

[16] *Yori v. Helms*, 307 Neb. 375, 949 N.W.2d 325 (2020).

[17] Neb. Ct. R. § 4-203 (rev. 2020).

[18] *Id.*

[19] See *id.*

One such circumstance is for juveniles placed in foster care.[20] Another is "whenever the application of the guidelines in an individual case would be unjust or inappropriate."[21] Further, a different guideline provides that if the child is residing with a third party, the court "shall order each of the parents to pay to the third party their respective amounts of child support as determined by the worksheet."[22]

Roberto did not request a deviation from the district court—a failure that would typically preclude relief for two reasons. First, a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[23] Second, a party cannot complain of error which the party has invited the court to commit.[24] Roberto's proposed child support calculations offered in 2022 in connection with the orders nunc pro tunc did not request a deviation, nor did he propose a child support calculation with a deviation in connection with his 2023 complaint to modify.

But no appellate decision has addressed the interplay between the respective powers and duties of a district court and a juvenile court when a child support order exists and a child is subsequently placed in foster care. The bench and the bar had no guidance regarding how to proceed in such a situation. We acknowledge that the district court lacked guidance from the appellate courts and received little assistance from the parties. Further, the situation appears to have been muddled by the absence of any effort by the parties to address child support during the juvenile court proceedings.

[5] In this situation, we conclude that the option selected by the district court—leaving Roberto's child support obligation

---

[20] § 4-203(D).

[21] § 4-203(E).

[22] Neb. Ct. R. § 4-222 (rev. 2011).

[23] *Seid v. Seid*, 310 Neb. 626, 967 N.W.2d 253 (2021).

[24] *Id*.

unchanged—amounted to plain error. Plain error exists where there is an error, plainly evident from the record, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process.[25]

Roberto has produced sufficient evidence to rebut the presumption that the application of the child support guidelines will result in a fair and equitable child support order.[26] There is no dispute that Adriana is, and has been, in foster care. Nor is there dispute about the periods of time when Angel, Adrian, and Roberto Jr. were in foster care. However, a DHHS "Payment History Report" in the record shows that of Roberto's $779 monthly child support payment, $194.75 is payable to DHHS and the remaining $584.25 is payable to Lizeth. A report titled "Judgment Totals to 03/02/2023" shows a balance payable to Lizeth of $49,381.34 and a balance payable to DHHS of $11,354.75.

While the district court may lack jurisdiction to make a custody change, it can use its equitable powers to make a downward deviation of Roberto's child support obligation. And while Roberto may remain liable to support his children even when they were not in Lizeth's custody, it is inequitable for Lizeth to receive those payments.

Because we review the district court's decision de novo on the record for an abuse of discretion, that court should have the opportunity in the first instance to consider whether a deviation should be allowed to account for the time that the children were in foster care, rather than in Lizeth's custody. Accordingly, we vacate the district court's decision concerning child support and remand the cause for further proceedings in accordance with this opinion.

---

[25] *Tyler F. v. Sara P.*, 306 Neb. 397, 945 N.W.2d 502 (2020).

[26] See Neb. Rev. Stat. § 42-364.16 (Reissue 2016).

## Garnishment

Roberto also argues that the district court erred in approving a garnishment of his bank account for $59,692.88 for back child support. Because we have vacated the judgment and remanded the cause for further proceedings concerning Roberto's child support obligation and because whether the amount of garnishment was proper depends upon the amount of Roberto's child support, we likewise vacate the judgment and remand the cause concerning the court's garnishment findings.

## CONCLUSION

We conclude that the district court did not err in declining to make a custody determination while jurisdiction over Adriana remained in the juvenile court. However, we vacate the judgment and remand the cause to the district court for further proceedings regarding Roberto's child support obligation and the garnishment of his bank account.

Affirmed in part, and in part vacated and remanded for further proceedings.