IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

HUBBARD V. DAVENPORT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEREMY J. HUBBARD, APPELLANT AND CROSS-APPELLEE,

V.

DUSTY J. DAVENPORT, NOW KNOWN AS DUSTY J. LANGE, APPELLEE AND CROSS-APPELLANT.

Filed January 13, 2026.   No. A-25-319.

Appeal from the District Court for Dawson County: MATTHEW D. NEHER, Judge. Affirmed in part, and in part reversed and dismissed.

Bronson J. Malcom, of Malcom, Nelsen & Windrum, L.L.C., for appellant.

Vikki S. Stamm, of Stamm Romero & Associates, P.C., L.L.O., for appellee.

WELCH and FREEMAN, Judges.

PER CURIAM.

## I. INTRODUCTION

Jeremy J. Hubbard appeals from an order of the district court for Dawson County denying his complaint to modify regarding custody and parenting time, granting a motion to reopen evidence, and denying his motion for a new trial. Dusty J. Davenport, now known as Dusty J. Lange, cross-appeals, arguing that the court erred in its child support calculations. For the reasons set forth below, we affirm in part, and reverse and dismiss in part.

## II. BACKGROUND

### 1. 2014 PROCEEDINGS

Hubbard and Lange are the biological parents of one daughter, Paecyn, born in 2011. In July 2014, the district court entered a decree of paternity granting legal custody and primary physical custody to Lange, subject to Hubbard's parenting time.

- 1 -

## 2. CURRENT PROCEEDINGS

On March 26, 2024, Hubbard filed a complaint to modify, alleging that there had been a material change in circumstances and asked the court to modify the decree and incorporate a parenting plan to grant Hubbard joint legal and physical custody of the minor child. The parties attempted mediation in the case on May 31, but did not resolve all of the issues. A notice of hearing was filed on June 18, notifying Lange that the final hearing on Hubbard's complaint to modify was set for July 9. This notice was sent to Lange by first class mail. Hubbard filed a witness list on July 1, and an exhibit list on July 2.

### (a) First Hearing

A hearing on the complaint to modify was held in the district court on July 9, 2024, at which Lange appeared pro se. At the beginning of the hearing, Lange asked for a continuance. Lange said that she did not receive notice of the final hearing date in the mail until July 2, that she contacted the court on July 3, and that the court told her she needed to contact Hubbard's counsel to see about a continuance. Lange said that she was not planning on representing herself, did not prepare anything, but had hired an attorney, Vikki Stamm. Hubbard's counsel noted that Stamm had not entered an appearance of counsel, that he spoke to Stamm the day before the hearing, and she gave him no indication that she would be entering an appearance in this case. Hubbard's counsel also stated that Lange was aware of what was required in this case, as she had been represented by counsel in prior family law matters for several years. Further, Hubbard's counsel stated he had subpoenaed witnesses and that trial needed to occur at that time; otherwise, Hubbard would entirely miss out on the daughter's summer vacation.

The court denied the motion for a continuance. During the hearing, Hubbard had several witnesses testify on his behalf and offered several exhibits. Hubbard testified that he had a more flexible work schedule and a new residence closer to the child's primary residence. Hubbard stated that Paecyn and Lange fought a lot, that Lange locked Paecyn out of the home, and that during their fights Paecyn would stay with him for lengthy periods of time.

Lange testified that she never locked Paecyn out of her home, but rather Paecyn was picked up from school by Hubbard and had forgotten her things inside the house and Lange was not home to unlock it. Lange said that she did not believe 50/50 custody would work as she had had sole custody over Paecyn for 13 years and Paecyn did not want that change.

Paecyn testified in camera. Paecyn, who was 12 years old at the time of the hearing, said that everything had been going "really, really well" with Lange, but that she and Hubbard got into fights "pretty often." Paecyn stated that she would prefer to stay with Lange. Paecyn said that she would prefer the parenting plan to stay the same.

Following the hearing, the court ordered two consecutive weeks of summer parenting time for Hubbard and took joint custody and modification of child support under advisement. The court also requested that Lange deliver her and her spouse's W2s to the court within the next two weeks and kept the record open, specifically, to obtain the W2s. Those W2s were never offered to the court.

(b) Second Hearing

On July 12, 2024, Stamm entered her appearance as Lange's counsel in this case. Lange then filed three motions: a motion to reopen evidence, a motion to reconsider the court's ruling, and a motion for a new trial. These motions alleged that Stamm was not hired until July 11, that at the prior hearing Lange had been unable and did not understand how to proceed in the matter, and that since Lange still needed to turn in her pay stubs, the record was still open. A hearing was set for August 15 and continued to August 22.

On August 27, 2024, the court granted the motion to reopen the evidence but denied the motion to reconsider and the motion for a new trial. There is no record of a hearing held on that day, although the order states that the matter came before the court and the court made "the following findings and rulings." Subsequently, a hearing was held on September 25, at which time Hubbard objected to the reopening of the evidence. During the hearing, Lange offered evidence, including her pay stubs, medical insurance information, and the testimony of witnesses.

Hubbard was reexamined and stated that since 2014 there were about six times where he had extended time with Paecyn due to Paecyn having "fights" with Lange. Hubbard said his main concerns with Lange's parenting was that she dated other men and was manipulative. Hubbard said that he believed Lange manipulates Paecyn by talking about him and his family, but he also testified to talking to Paecyn about Lange and Lange's family. Hubbard testified that he was concerned about Lange's parenting as he believes Lange taught Paecyn how to lie.

Lange testified to their parenting plan and stated that recently she and Hubbard have had issues communicating. Lange said that most of the time when Hubbard asks for additional time, she lets Paecyn decide. Lange stated that she could only recall two incidents where she and Paecyn had issues. She said that both incidents were related to her disciplining Paecyn or Paecyn forgetting to pack her clothes for her weekend with Hubbard. Lange said that Hubbard rarely asks for more parenting time, but that she has accommodated him when there were family events. Lange said that she did not support a shift in custody as she has had custody of Paecyn for Paecyn's entire life and her parenting relationship with Paecyn has not deteriorated.

After Lange testified, the hearing concluded without Hubbard offering any rebuttal evidence.

(c) Interim Motions and Order on Hubbard's Complaint

After the September 25, 2024, hearing both parties filed motions. On January 22, 2025, Hubbard filed a motion to show cause, accusing Lange of withholding his parenting time. On March 13, Lange filed a motion to show cause, accusing Hubbard of violating the parenting plan.

On March 25, the court issued an order on Hubbard's complaint to modify the parenting plan. The court found that there had not been a material change in circumstances and overruled the complaint to modify. The court found that Hubbard failed to meet his burden of proof, as Hubbard's testimony that he picked up Paecyn six times due to Lange and Paecyn fighting did not amount to considerably more parenting time than currently ordered. The court reasoned that even if this was a material change in circumstances, Hubbard did not demonstrate that the fighting and the six instances was permanent or continuous, but rather transitory or temporary. The court noted the testimony of Paecyn, who said she fought less with Lange and would prefer to stay with Lange.

However, the court modified the child support obligation, even though neither party had independently pled for such a change and even though the court had not found a material change in circumstances had been proven.

Following this order, Lange filed a motion for new trial or a motion for reconsideration or motion for order nunc pro tunc. The motion alleged that the order failed to use the correct date for the change in child support, failed to properly change the division of unreimbursed medical expenses, and failed to credit Lange for the cost of health insurance she was paying. On April 3, 2025, Hubbard filed a motion for a new trial, alleging irregularities in the proceedings which prevented him from receiving a fair trial, and that the decision of the court was not sustained by sufficient evidence or was contrary to law.

### (d) Third Hearing

On April 24, 2025, another hearing was held regarding numerous motions pending before the court: two motions for contempt, motions for a new trial, motions to interview the minor child, and Lange's motion to reconsider. At the time of this hearing, a new judge had been appointed to the case because the prior judge had recently resigned. The new judge had not presided over any of the prior hearings, nor had this judge issued any previous orders in this case. Both parties denied the allegations against them in their respective orders to show cause. Next, the court addressed the two motions for a new trial and Lange's motion to reconsider.

Lange reiterated her alleged problems with the order on Hubbard's complaint to modify, noting that it set an erroneous start date for child support, that the court should have changed provisions on reimbursement for medical costs, and that the court did not give Lange credit for health insurance.

Hubbard argued in support of his motion for a new trial. He argued that there were errors or irregularities in the proceedings that prevented him from receiving a fair trial. Hubbard recounted the timeline of the case, how he filed his complaint in March 2024, how the parties had attempted mediation in late May, and that trial was set for July 9. At the commencement of trial, Lange asked for a continuance, which was denied. Lange said that she was represented by Stamm and had hired her prior to the trial, but Hubbard pointed out that Stamm had not entered an appearance or corresponded with Hubbard or the court.

Hubbard noted that when Stamm entered her appearance, she alleged that she was not hired until July 11, 2024, which contradicted Lange's prior statement to the court that she hired Stamm before July 9. The court had reopened the evidence, which allowed Lange an opportunity to hire counsel, prepare and present any evidence that she wished at a hearing two and a half months after Hubbard had rested his case. Hubbard argued that there were no grounds to reopen the evidence, as there were no allegations of newly discovered evidence or anything else to justify the ruling. Hubbard pointed out that the court did not provide any rationale in granting the motion to reopen the evidence, but that the explanation was most likely that Lange was pro se at the time of trial.

Hubbard's second issue was that the court did not allow for further discovery. Hubbard also took issue with the timeliness of the process. He pointed out that he had to present evidence in July 2024, Lange presented evidence two and a half months later, and the order was not issued until March 2025. Therefore, the judge did not rule on this case until a little over 8 months after

Hubbard presented his evidence. Hubbard also said that the decision should be vacated as it was not supported by sufficient evidence.

The presiding judge acknowledged that she was new to the case and knew less than "anybody else" as far as what was said at trial. The judge said she did not know what had happened at trial, but she was going to "trust the prior judge and trust that he made the best decision" based on the testimony and the evidence. The court denied both motions for a new trial and the motion to reconsider.

## III. ASSIGNMENTS OF ERROR

On appeal, Hubbard assigns, restated and reordered, that the district court abused its discretion in (1) granting the motion to reopen the evidence, (2) finding that there was no material change in circumstances since the entry of the prior custody order, and (3) denying his motion for a new trial.

On cross-appeal Lange assigns, restated and consolidated, that the district court abused its discretion in its determination of child support.

## IV. STANDARD OF REVIEW

The reopening of a case to receive additional evidence is a matter within the discretion of the district court and will not be disturbed on appeal in the absence of an abuse of that discretion. *Myhra v. Myhra*, 16 Neb. App. 920, 756 N.W.2d 528 (2008).

An appellate court reviews a judge's ruling on a motion for a new trial for an abuse of discretion. *State on behalf of Keegan M. v. Joshua M.*, 20 Neb. App. 411, 824 N.W.2d 383 (2012).

Modification of a judgement or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *Lizeth E. v. Roberto E.*, 317 Neb. 971, 12 N.W.3d 809 (2024).

## V. ANALYSIS

### 1. REOPENING OF EVIDENCE

We first address the issue of whether the district court abused its discretion in granting Lange's motion to reopen the evidence.

Among factors traditionally considered in determining whether to allow a party to reopen a case to introduce additional evidence are (1) the reason for the failure to introduce the evidence, i.e., counsel's inadvertence, a party's calculated risk or tactic, or the court's mistake; (2) the admissibility and materiality of the new evidence to the proponent's case; (3) the diligence exercised by the requesting party in producing the evidence before his or her case closed; (4) the time or stage of the proceedings at which the motion is made; and (5) whether the new evidence would unfairly surprise or unfairly prejudice the opponent. *Frederick v. City of Falls City*, 295 Neb. 795, 890 N.W.2d 498 (2017).

In this case, there is no record of what factors were considered by the court on the motion to reopen the evidence. In the absence of a record of the evidence considered by the court, it is presumed on appeal that the evidence supports the trial court's orders and judgment. *William P. v. Jamie P.*, 313 Neb. 378, 984 N.W.2d 285 (2023).

Turning to the transcript that this court received, Lange filed a motion to reopen the evidence. The order of the district court stated that the matter came before the court, and the court made "the following findings and rulings" when granting Lange's motion to reopen evidence.

Although we lack a record of what the district court considered when reopening the evidence, we are required to presume that the evidence supports the district court's order granting the motion to reopen evidence in favor of Lange. Therefore, we find that the district court did not abuse its discretion when granting the motion to reopen evidence, and that reopening the evidence did not prejudice Hubbard.

## 2. MATERIAL CHANGE IN CIRCUMSTANCES

The next issue Hubbard assigns is that the district court erred in finding no material change in circumstances since the entry of the prior custody order.

Custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. See *Larson v. Larson*, 33 Neb. App. 609, 23 N.W.3d 670 (2025). It is the burden of the party seeking modification to show a material change in circumstances. *Id.* Specifically, the movant must show two elements: First, that since the entry of the most recent custody order, there has been a material change in circumstances that affects the child's best interests, and second that it would be in the child's best interests to change custody. *Id.*

Consideration of the child's best interests involves a combination of both mandatory and permissive factors. *Id.* Neb. Rev. Stat. § 43-2923(6) (Reissue 2016) requires that certain factors must be considered, including (1) the relationship of the child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Larson v. Larson, supra.* Other relevant considerations that may also be considered include the stability of the child's existing routine, minimization of contact and conflict between the parents, and the general nature and health of the child. *Id.* No one factor is dispositive, and various factors may weigh heavily, depending on the case. *Id.*

Hubbard argues that the district court erred as Hubbard has exercised considerably more parenting time than previously ordered, and that there was a deterioration in the relationship between Lange and the minor child. Hubbard also testified regarding his perceptions of Lange's inadequacies in caring for and disciplining Paecyn, and we recognize that there is conflicting testimony as to Hubbard's allegations of whether an alteration in custody would be in the child's best interests. When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed witnesses and accepted one version of the facts rather than another. *Scott v. Scott*, 319 Neb. 877, 25 N.W.3d 439 (2025).

The record shows that even if Hubbard had proven a material change in circumstances, he did not meet his burden of proof to show that it would have been in Paecyn's best interests to alter the parenting plan by changing custody. The district court noted in its order that Hubbard failed to demonstrate the relationship between Lange and Paecyn had deteriorated causing Paecyn to spend more time with Hubbard. We agree.

Upon our review of the record, it was not disputed that Paecyn had been with Lange for most of her life, and Paecyn would prefer to stay with Lange. Hubbard testified that Lange and Paecyn fought about six times in the previous ten years and, as a result, he would take Paecyn for lengthy periods of time. Lange's testimony contradicted this, and she could only recall two incidents where Hubbard had to come get Paecyn due to their fights. Regardless of whether it was two or six times, this does not illustrate that Lange and Paecyn's relationship was deteriorating. This also does not make Lange an unfit or neglectful parent.

Further, Paecyn testified to her relationship with both parents. Paecyn said that her relationship with Lange was going "really well" and that she gets into more fights with Hubbard. Paecyn also said that she would prefer to stay with Lange and she would prefer the parenting plan to stay the same. We find that the relationship of the child with each parent, as well as the child's preferences, weigh heavily in this case.

Even assuming that there had been a material change in circumstances, we find the district court did not abuse its discretion in finding that Hubbard failed to satisfy his burden to prove the change would be in the best interests of his child.

### 3. MOTION FOR NEW TRIAL

Lastly, Hubbard argues that the district court erred in failing to review the record prior to ruling on appellant's motion for a new trial. In that motion, he alleged that there had been "irregularities in the proceedings which prevented [Hubbard] from having a fair trial and the decision of the Court was not sustained by sufficient evidence, or was contrary to law." He argues that the new judge, who presided over the motions on April 24, 2024, acknowledged that she did not know what happened at trial and could not make a judgment on whether an error was made as she did not hear the evidence.

However, Hubbard admitted this was a unique situation in his brief, as the original trial judge, who conducted this two-day trial and observed the witnesses, resigned with fairly short notice. Other than the two assignments of error above, which we have rejected, Hubbard does not specify what the alleged irregularities were nor does he detail for us in what manner the evidence was insufficient and contrary to law. As a result, this argument fails.

### 4. CHILD SUPPORT

On cross-appeal, Lange argues restated and consolidated, that the district court abused its discretion in its determination of child support.

Modifying a part of the original child support order absent a request by either party or a reasonable explanation for the changes constitutes an abuse of discretion. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001).

In the original decree of paternity, which the district court took judicial notice of at the modification hearing, Hubbard was ordered to pay $452 for child support. In his complaint to modify, Hubbard did not request a change in child support. Lange's answer to the complaint also did not request a change in child support.

Although Hubbard did not assign or argue this issue in his brief, we choose to review this for "plain error." Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial

process. *Wilson v. Wilson*, 23 Neb. App. 63, 867 N.W.2d 651 (2015). The decision to proceed on plain error is at the discretion of the appellate court. *Id.*

Given the fact that neither party had affirmatively requested a change in child support and the court's finding that a material change in circumstances had not been proven, we conclude that the district court abused its discretion in modifying the child support when the issue was not properly raised in this case.

## VI. CONCLUSION

We therefore conclude that the district court did not abuse its discretion in granting the motion to reopen evidence and denying Hubbard's complaint to modify regarding custody and parenting time. We find that the district court did abuse its discretion in modifying the child support. We therefore reverse and dismiss the district court's order modifying child support. The rest of the district court's decision dismissing Hubbard's complaint to modify the original decree is affirmed.

AFFIRMED IN PART, AND IN PART
REVERSED AND DISMISSED.

PIRTLE, Judge, participating on briefs.